UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEGUSSA ADMIXTURES, INC.,

       Plaintiff,

                                  CASE NO. 1:05-CV-705

v.

                                  HON. ROBERT HOLMES BELL

DOUGLAS BURNETT and
SIKA CORPORATION,

       Defendants.

_____/

## **OPINION**

      Plaintiff Degussa Admixtures brings this action against its former salesperson, Defendant Douglas Burnett, and his new employer, Defendant Sika Corporation. After a year-and-a-half of active litigation, including extensive discovery, Plaintiff filed a motion to voluntarily dismiss without prejudice (Docket #40). Defendants filed a cross motion for sanctions (Docket #41). On September 11, 2006, this Court granted Plaintiff's motion for voluntary dismissal, conditioned on Plaintiff's payment of Defendants' reasonable attorney fees (Docket #59). Plaintiff was given until September 29, 2006 to elect to pay the attorney fees and be voluntarily dismissed or to withdraw its motion. The order further directed that, should Plaintiff withdraw its motion, Defendants were to file their motions for summary judgment not later than 28 days after Plaintiff made its election.

On September 29, 2006, Plaintiff filed a notice of withdrawal of its motion to dismiss without prejudice (Docket #62). On that same date, it filed a motion to dismiss the action with prejudice (Docket #63). On October 16, 2006, Defendants filed a response and motion renewed motion for sanctions pursuant to FED. R. CIV. P. 11, MICH. COMP. LAWS § 445.1905, and 28 U.S.C. § 1927 (Docket #64). Apparently because the Court had not yet ruled on Plaintiff's motion to dismiss with prejudice, Defendants also filed a motion for summary judgment (Docket #66) on October 27, 2006. All three motions presently are before the Court.

### I.

Degussa is one of the leading manufacturers of chemical and mineral admixtures for specialty concrete products and underground markets. Defendant Burnett was employed as a Degussa Senior Sales Representative for the western half of Michigan until July 31, 2005. In 1989, Burnett signed an Employee Patent and Confidential Information Agreement with Plaintiff's predecessor, Master Builders Technologies. Unlike most Degussa sales representatives, however, Burnett never signed a non-competition agreement. Burnett was a very successful salesperson for Degussa. He was employed on an at-will basis.

On August 12, 2005, Burnett left Degussa and began employment with Sika Corporation as a senior sales representative for all of Michigan. Sika required confirmation that Burnett did not have a non-competition agreement with Degussa before he was offered employment. Sika was made aware of the confidentiality agreement, but, after a review of

2

his employee file, Burnett confirmed he had never signed a non-competition agreement. Once Burnett was hired, he began marketing Sika products to the same customers he previously had solicited while at Degussa, as well as to all other customers in Michigan. The customer list, was composed from publicly available information that could be taken from the yellow pages, since it consisted of regional concrete companies. Within a relatively short period, Burnett was successful in placing Sika products at approximately eight former customers of Degussa.

Degussa brought its action with no evidence of wrongdoing. Instead, it relied upon rumor that Burnett's initial compensation package was unusually high, from which it inferred that Sika was compensating Burnett for trade secret information. It also speculated that Burnett had retained a copy of the Great Lakes Pricing Tool 2005 because the document was not among the Degussa property Burnett returned when he resigned. In addition, Degussa assumed that Burnett's success in selling Sika products necessarily meant that he had used unspecified confidential information. Finally, it relied on a highly ambiguous customer comment to infer that Burnett had used confidential Degussa pricing information to underbid Degussa. The company had no other evidence supporting its theories, other than the fact that it believed Burnett had not returned all paper copies and personal files it assumed he possessed that might have contained proprietary information. The complaint also was brought, notwithstanding the fact that Degussa was aware it had little salesperson presence in the area for a considerable time after Burnett left and that the salesperson who eventually

3

replaced Burnett was inexperienced and did not pursue any personal relationships with the companies he contacted.

When the complaint was filed on October 14, 2005, Degussa sought a temporary restraining order barring Burnett from contacting ongoing and prospective Degussa employees. On that same date, this Court denied the motion by memorandum opinion and order, finding that Degussa had, at best, alleged that Burnett possessed generalized trade secrets and was now employed by a competitor. The Court concluded that a serious question existed as to whether Burnett possessed any confidential information or trade secrets, and Degussa therefore failed to show a substantial likelihood of success on the merits. Further, the Court noted that, by waiting until two months after Burnett began his employment with Sika to file a motion, Degussa undermined its position that it would suffer irreparable harm.

The parties conducted discovery, including the taking of key depositions, immediately in advance of the date of a preliminary injunction hearing. After taking those depositions on November 3, 2005, Plaintiff withdrew its request for preliminary injunctive relief. It did not, however, seek to voluntarily dismiss the action without prejudice until July 17, 2006. The instant motion to dismiss the action with prejudice was filed on September 29, 2006.

## II.

A.  <u>Motion to Dismiss</u>

Defendants do not contest that Plaintiff's motion for voluntary dismissal with prejudice should be granted. The Court agrees. It generally is considered an abuse of

4

discretion for a court to deny a plaintiff's request for voluntary dismissal with prejudice. *See Smoot v. Fox ("Smoot I")*, 340 F.2d at 301, 303 (6th Cir. 1964); *Spar Gas, Inc. v. AP Propane, Inc*, No. 91-6040, 1992 WL 172129, at *2 (6th Cir. July 22, 1992). Plaintiff's motion, therefore, will be granted and judgment will be entered for Defendants on all claims.[1]

    B.    <u>Motion for Award of Attorney Fees</u>

Defendants move for an order requiring Plaintiff to pay Defendants reasonable attorney fees and expenses. In their renewed motion for fees, Defendants argue that attorney fees under FED. R. CIV. P. 41(a)(2) are appropriate both because there exist exceptional circumstances that would make the dismissal otherwise unfair to Defendants and because "the case is of a kind in which an attorney's fee might otherwise be ordered after termination of the case on the merits." *Gilbert Int'l Corp. v. Lionel Leisure, Inc.*, 587 F. Supp. 605, 614-15 (E.D. Penn. 1983). Defendants also contend that attorney fees should be awarded under the authority of MICH. COMP. LAWS § 445.1905 and FED. R. CIV. P. 11.

    1.    **FED. R. CIV. P. 41(a)(2)**

Under FED. R. CIV. P. 41(a)(2), a plaintiff's request for dismissal shall be granted only "upon such terms and conditions as the court deems proper." Under this provision, courts frequently award costs and attorney fees when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2). *See Duffy v. Ford Motor Co.*, 218 F.3d 623, 629 (6th Cir.

---

[1] In light of the Court's grant of Plaintiff's motion to dismiss with prejudice, Defendants' motion for summary judgment will be denied as moot.

2000); *DWG Corp. v. Granada Investments, Inc.*, 962 F.2d 1201 (6th Cir. 1992); *Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985); 5 J. MOORE, MOORE'S FEDERAL PRACTICE, ¶ 41.06, at 41-74 (2d ed. 1948 & Supp. 1984); 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2366, at 177-80 (1971 & Supp. 1984).  One purpose for such awards is to reimburse the defendant for the litigation costs incurred, in view of the risk faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him.  *See Colombrito*, 764 F.2d at 133; *Smoot v. Fox ("Smoot II")*, 353 F.2d 830, 833 (6th Cir. 1965); *John Evans Sons, Inc. v. Majik-Ironers, Inc.*, 95 F.R.D. 186, 191 (E.D. Pa. 1982). Other courts have recognized that the award of costs serves a dual purpose: "to fully compensate the defendant for reasonable expenses incurred before dismissal and to deter vexations litigation." *Siek v. American Airlines, Inc.*, No. 01-4473-CIV, 2002 WL 2018833 at *2 (S.D. Fla. 2002) (citing 5 J. MOORE, J. LUCAS, J. WICKER, MOORE'S FEDERAL PRACTICE §§ 41.05[1], 41.06 (2d ed. 1982)); *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 298 (5th Cir.1963); *Green Giant Co. v. M/V Fortune Star*, 92 F.R.D. 746, 749 (S.D. Ga. 1981)), *vacated on other grounds*, 238 F. Supp. 2d 1309 (S.D. Fla. 2002); *Mann v. Edwards*, 37 F.R.D. 452, 454 (W.D.S.C. 1965).  While an award of costs and fees is not mandatory in the grant of voluntary dismissal without prejudice, such an award is within the discretion of the district court.  *Id.*

In contrast, when a lawsuit is voluntarily dismissed with prejudice under FED. R. CIV. P. 41(a)(2), attorney's fees ordinarily are not available.  *See Smoot II*, 353 F.2d at 833;

*Massey v. City of Ferndale*, No. 96-1386, 1997 WL 330652 (6th Cir. Mich. June 16, 1997). Several courts have held that a Rule 41(a)(2) award of fees in such a situation is appropriate only when there is independent statutory authority for such an award. *See Smoot II*, 353 F.2d at 833; *Colombrito*, 764 F.2d at 133-34; *Larchmont Eng'g, Inc. v. Toggenberg Ski Ctr., Inc.*, 444 F.2d 490, 491(2d Cir. 1971) (assuming that a fee award was only proper under the terms of the applicable patent law); *accord Sarkes Tarzian, Inc. v. Philco Corp.*, 351 F.2d 557, 559-61 (7th Cir. 1965); *Wainwright Sec. Inc. v. Wall St. Transcript Corp.*, 80 F.R.D. 103, 108 (S.D.N.Y. 1978); *Pac. Vegetable Oil Corp. v. S/S Shalom*, 257 F. Supp. 944, 948 (S.D.N.Y. 1966) ("[I]t is clear that in the context of a dismissal with prejudice attorney's fees and expenses are not appropriate."). Some courts have assumed or held that fees can be awarded under exceptional circumstances but have failed to find such circumstances on the facts before them. *See Mobile Power Ent., Inc. v. Power Vac, Inc.*, 496 F.2d 1311, 1312 (10th Cir. 1974), *overruled in other part, Cantrell v. Int'l Bhd. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456 (10th Cir. 1995); *John Evans Sons, Inc.*, 95 F.R.D. at 191. Other courts have declined to award fees without precisely defining the governing rule. *See, e.g., Arthur v. Starrett City Assoc.*, 98 F.R.D. 500, 504-05 (E.D.N.Y. 1983); *M.A. Gammino Constr. Co. v. Great Am. Ins. Co.*, 52 F.R.D. 323, 326-27 (D.R.I. 1971). "The reason for denying a fee award upon dismissal of claims with prejudice is simply that the defendant, unlike a defendant against whom a claim has been dismissed without prejudice, has been freed of the risk of relitigation of the issues just as if the case had been adjudicated in his

favor after a trial, in which event (absent statutory authorization) the American Rule would preclude such an award." *Colombrito*, 764 F.2d at 133-34; *Smoot II*, 353 F.2d at 833.

Here, by seeking dismissal of the action with prejudice, Plaintiff has consented to a full judgment against it, preventing relitigation of any of its claims in a subsequent action. No exceptional circumstances have been demonstrated beyond Defendants contentions that Plaintiff's complaint was brought without a good-faith basis. Rule 41(a)(2) does not grant independent authority for awarding costs solely on the basis of vexatious litigation. Instead, parties are protected from frivolous litigation by the provisions of FED. R. CIV. P. 11. Absent authorization under Rule 11 or independent statutory authority, this Court is precluded from shifting attorney fees to Defendants. *See Smoot II*, 353 F.2d at 833; *Colombrito*, 764 F.2d at 133-34. The Court will consider those questions separately. Rule 41(a)(2), however, does not support the award of attorney fees in conjunction with a dismissal with prejudice.

### 2. FED. R. CIV. P. 11

Defendants move for the imposition of attorney fees upon Plaintiff pursuant to FED. R. CIV. P. 11. They argue that Plaintiff's claims were legally and factually unfounded when filed and/or that Plaintiff continued to pursue its claims long after it knew or should have known that those claims were unfounded.

Sanctions under FED. R. CIV. P. 11 require adherence to the rule's requirements.

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to

8

>    violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

FED. R. CIV. P. 11(c)(1).

It does not appear that Defendants served their motion for sanctions on Degussa 21 days before filing it, as required by the safe-harbor provision of FED. R. CIV. P. 11(c)(1)(A) (requiring moving party to serve the motion for sanctions on opposing party 21 days before filing it with the court). *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997); FED. R. CIV. P. 11(c)(1)(A). Defendants suggest that they have "substantially complied" by advising Plaintiff of their intent to seek sanctions nearly seven months before actually filing their motion. Nothing, however, interfered with Defendants' ability to meet the requirement except Defendants' own participation in discovery. Mere threats to seek sanctions do not constitute substantial compliance with Rule 11. *See Bates v. Colony Park Ass'n*, 393 F. Supp. 2d 578, 601-02 (E.D. Mich. 2005). Accordingly, Defendants' request for sanctions in the form of attorney fees pursuant to Rule 11 is denied.

### 3.    MICH. COMP. LAWS § 445.1905

Count Three of Plaintiff's complaint alleges misappropriation of trade secrets in violation of the Michigan Uniform Trade Secrets Act ("MUTSA"), MICH. COMP. LAWS § 445.1901 *et seq.*  The MUTSA defines "misappropriation" as either of the following:

> (b)(i)  Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.
>
> (ii) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:
>
> (A) Used improper means to acquire knowledge of the trade secret.
>
> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired it under circumstances giving a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.
>
> (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

MICH. COMP. LAWS § 445.1902(b).  "Trade secret" is defined by the MUTSA as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
>
> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from its disclosure or use.
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

MICH. COMP. LAWS § 445.1902(d).

During discovery and at oral argument on Defendants' first motion for sanctions, Plaintiff acknowledged that it had no direct evidence that Defendant Burnett had in fact disclosed or utilized trade secrets in his employment with Sika, except that Burnett had been successful in placing Sika products with former Degussa customers. Instead, Degussa has argued that the nature of the trade secrets Burnett possessed was such that they would inevitably be disclosed during his employment with Sika.

The trade secrets identified by Plaintiff are few. Plaintiff contends that, on June 8, 2005, Burnett was handed a copy of Plaintiff's Great Lakes Pricing Tool 2005, which lays out the pricing structure for each of Degussa's products. According to Plaintiff, Burnett never returned the confidential document and, therefore, must still possess it and inevitably rely upon it in his work with Sika. Plaintiff also contends that, while at Degussa, Plaintiff electronically received periodic sales reports containing pricing and marketing strategy, sales trend information, profit margin information, and business forecasts, as well as incentive compensation program information, and that not all of those documents were returned to Degussa upon Plaintiff's departure. Plaintiff argues that, because Plaintiff had and possibly continues to have access to pricing materials, it is inevitable that he would use such information to undercut Degussa's price. Further, Degussa alleges that Burnett had access to Degussa's particularized product solutions and formulation information and could use that information to meet customer specifications. In addition, Degussa contends that Burnett was

compensated by Sika at a higher level than other Sika salespersons, suggesting that Sika was compensating Burnett for his disclosure of Degussa trade secrets.

As Degussa acknowledged at oral argument, the customer lists and Burnett's personal relationships with those customers are not trade secrets. (9/8/06 Hrg. Tr. at 10.) The deposition testimony of Degussa's Vice President of Sales, Alan Nedza, reveals that, at the time Degussa filed a complaint and attached Nedza's affidavit, Nedza possessed no factual basis for believing that Burnett had revealed confidential information beyond the facts that Burnett was selling a competitor's product in his same sales region, was acquiring Degussa customers, that other former Degussa employees who had moved to Sika had, according to rumor, been paid above-market wages, and that, in some such cases, Sika had not employed those salespersons in the same sales territory. (10/28/05 Sealed Dep. of Alan Nedza, docket #42)[2] Neither Nedza nor Degussa's Area Manager, Tom Bobrowski, to whom Nedza deferred in his deposition, had more than second-hand rumor of the compensation package paid to Sika employees generally or to Burnett in particular. (11/3/2005 Sealed Dep. of Tom Bobrowski, docket #43.)[3] Moreover, Bobrowski had no information from any customer that Burnett had used confidential information to undercut Degussa's competitive position.

---

[2] The Court has not cited specifics from Degussa employee depositions, in light of the parties' designation of substantial portions as confidential and the filing of those depositions under seal.

[3] Indeed, Degussa's information regarding allegedly "excessive" compensation was related to pay received by a former Degussa employee who was not selling to his former Degussa customers. That information therefore provides no support for a conclusion that Burnett was being compensated excessively to disclose trade secrets.

Instead, he was aware of only one ambiguous customer comment suggesting that, while the Sika price was lower, the customer arguably was moving to Sika for reasons other than price. Further, Bobrowski acknowledged that he had no information to indicate that Burnett had information about the profit margins on Degussa products. He also had no knowledge of whether Burnett ever possessed a hard copy of monthly sales reports. He acknowledged that Burnett could not possibly have committed the information from such reports to memory and that Burnett had returned his computer to the company. Finally, Nedza testified that Degussa and Sika products were not fungible, precluding Burnett from using his alleged knowledge of specific customer formulation information to substitute Sika products.

In sum, Plaintiff has proffered no evidence that Defendant Burnett used any trade secret information. Moreover, discovery revealed that Degussa conducted no substantial sales activity in Burnett's former sales region during the months following Burnett's move to Sika. Discovery further revealed no difference between the sales compensation package received by Burnett and that received by any other Sika sales representative. The only variance was a minimum guarantee or draw on commissions for the first two quarters of his employment with Sika, a guarantee Burnett easily reached. (11/3/05 Sealed Dep. of Richard Shadle, docket #68.)

In sum, as Degussa admitted during depositions, Plaintiff's claim essentially relies upon the "inevitable disclosure doctrine," the theory that Burnett inevitably will disclose general, allegedly confidential, pricing information when selling Sika products to Degussa

13

customers.[4]  Plaintiff's reliance on the doctrine of inevitable disclosure raises significant questions under MICH. COMP. LAWS § 445.1905.  As Defendants note, the doctrine has never been adopted in Michigan and, even where it has been discussed, it has only been suggested to be applicable to high executives and key designers of the company's strategic plans and operations.  *See, e.g., CMI Int'l, Inc. v. Intermet Int'l Corp.*, 649 N.W.2d 808, 813 (Mich. Ct. App. 2002); *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1268 (6th Cir. 1995).

> Moreover, the *CMI* court expressly stated that,
>
> [e]ven assuming that the concept of "threatened misappropriation" of trade secrets encompasses a concept of inevitable disclosure, that concept must not compromise the right of employees to change jobs.  Accordingly, we hold that for a party to make a claim of threatened misappropriation, whether under a theory of inevitable disclosure or otherwise, the party must establish more than the existence of generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets.

*CMI*, 649 N.W.2d at 813 (citations omitted).

Plaintiff's allegations and supporting facts fail entirely to meet *CMI*'s heightened threshold.  The evidence indicates that Degussa was aware that Plaintiff had no more than generalized information regarding Degussa prices.  The evidence also indicates that competitor prices are substantially available in the public domain, as customers frequently reveal what they are paying to the competition.  Moreover, Plaintiff has identified no basis for its allegation that Burnett had any authority to set prices for Sika products.  Indeed, the

---

[4]Nedza admitted in his deposition that customers were not precluded from disclosing Degussa's prices to competitors and that customers frequently did so.  It is not clear, therefore, that customer prices were in fact trade secrets within the meaning of the MUTSA.

undisputed evidence indicates that prices were determined by the area manager and that Burnett had no ability to underbid any Degussa price.[5]

At best, Plaintiff has alleged the existence of only general trade secrets, making its reliance on the inevitable disclosure doctrine unreasonable. Instead, most of Plaintiff's theories are a thinly disguised attempt to turn Burnett's confidentiality agreement into a non-competition agreement. The gravamen of the complaint is that Burnett and Sika behaved unfairly and unlawfully simply because Burnett used his relationships with Degussa customers in a manner that would have violated a non-competition agreement – an agreement that Burnett had never signed.

Section 445.1905 of the MUTSA provides for the award of attorney fees under certain circumstances:

> If a claim of misappropriation is made in bad faith . . . the court may award reasonable attorney's fees to the prevailing party."

*Id.* Defendants argue that, because a voluntary dismissal with prejudice operates as a complete adjudication on the merits, *see Smoot II*, 353 F.2d at 833, they should be entitled, as prevailing parties, to recover their reasonable attorney fees under the statute.

Plaintiff does not dispute that Defendants may be considered prevailing parties upon the entry of a voluntary judgment of dismissal. It responds, however, that Defendants have

---

[5]Degussa suggests that, according to the evidence, Burnett may have had an ability to demand a price higher than the Sika minimum, but Degussa fails entirely to explain how that ability would negatively affect Degussa's competitive position.

failed to demonstrate the requisite "bad faith" in Plaintiff's pursuit of its claim of misappropriation. MICH. COMP. LAWS § 445.1905.

Interpreting the Maryland Uniform Trade Secrets Act, a federal district court has concluded that, in order to demonstrate bad faith, a defendant must show "'clear evidence that the action [was] entirely without color and taken for other improper purposes amounting to bad faith.'" *Contract Materials Processing, Inc. v. Kataleuna GMBH Catalysts*, 222 F. Supp. 2d 733, 744 (D. Md. 2002) (quoting *Optic Graphics, Inc. v. Agee*, 591 A.2d 578, 588 (Md. Ct. App. 1991)). The "'bad-faith exception for the award of attorney's fees is not restricted to cases where the action is filed in bad faith . . . [but] may be found . . . in the conduct of the litigation.'" *Id.* (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). Similarly, interpreting the California Uniform Trade Secrets Act, courts have held that "'bad faith' exists when the court finds '[(1)] objective speciousness of the plaintiff's claim and [(2) plaintiff's] subjective misconduct in bringing or maintaining a claim for misappropriation of trade secrets.'" *Id.* (quoting *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 116 Cal. Rptr. 2d 358, 367 (Cal. Ct. App. 2002)).[6]

Having reviewed the briefing and exhibits by the parties, the Court finds that Plaintiff's claims were objectively unsupported, both factually and under Michigan law, at the time of filing. Further, the Court concludes that the deposition testimony of Plaintiff's

---

[6]The attorney's fees provision of both the Maryland Uniform Trade Secrets Act, MD. CODE ANN. COMM. LAW II § 11-1204(1), and the California Uniform Trade Secrets Act, CAL. CIV. CODE § 3426.4, contain identical language to the MUTSA.

witnesses consistently demonstrates that Plaintiff's fundamental complaint was that Burnett was using his general industry knowledge and preexisting relationships to compete for customers he had cultivated while employed at Degussa. In the absence of a non-competition agreement or the unfair use of genuine trade secret information, such conduct was perfectly proper. Plaintiff's invocation of the MUTSA to prevent legitimate competition constituted an improper purpose.

The Court therefore finds that attorney fees are properly awarded to Defendants under MICH. COMP. LAWS § 445.1905. Having reached that conclusion, however, the Court finds that Defendants' decision to file a motion for summary judgment was unnecessary, and fees associated with that filing should not be subject to reimbursement. Because the Court lacked discretion to deny a motion to dismiss with prejudice, once Plaintiff filed its motion, no further dispositive motion was required.

Accordingly, Defendants shall file within fourteen days of the issuance of this opinion and judgment a renewed affidavit and supporting documents for attorney fees incurred through and including the renewed motion for sanctions. Plaintiff shall have ten days to file a brief in response challenging any specific fees.

### III.

For the foregoing reasons, the Court will **GRANT** Plaintiff's motion to dismiss with prejudice. The Court also will **GRANT** Defendants' motion for attorney fees. Defendants'

motion for summary judgment will be **DENIED** as moot.  A Judgment consistent with this Opinion will issue.


Dated:   January 29, 2007             /s/ Robert Holmes Bell
                                                         ROBERT HOLMES BELL
                                                         CHIEF UNITED STATES DISTRICT JUDGE